# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| OPS 2, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 2:08-cv-00967-RLH -VCF |
| COUNTY OF CLARK, | ) ) | **O R D E R** |
| Defendant. | ) ) ) | |

Before the court is plaintiff OPS 2, LLC's (hereinafter "OPS") Motion To Exclude Testimony and Opinions of Defendant's Expert Jeffrey A. Lovitky, Esq. (#98). Defendant County of Clark, on behalf of University Medical Center (hereinafter "UMC"), filed an Opposition (#104), and plaintiff filed a Reply (#105).

**Background**

On March 11 and 12, 2006, defendant UMC published an Invitation to Bid (hereinafter "ITB") No. 2006-06, Accounts Receivable Sale, for the sale of approximately 766,000 charged-off consumer healthcare accounts from UMC. (#104 Exhibit E). The ITB stated that the contract was limited to written documents and was not subject to any alleged oral representations not provided to all bidders in written form. *Id.* Bidders were provided with a compact disc containing the portfolio information for the accounts. (#104). On March 24, 2006, UMC issued Addendum No. 1 to the ITB which replaced special provisions 1 and 2 with language stating that "There will be no replacement accounts." *Id.* The addendum also deleted special provision 4 and gave the bidders a more detailed description of the accounts in the portfolio. *Id.* The addendum was provided to the bidders prior to any bids being placed. *Id.* UMC allegedly informed the bidders that the accounts were all placed with agencies seeking first party collections and that the account were subject to collection efforts. *Id.*

The opening bid date was April 6, 2006, at 3:00 p.m. *Id.* Plaintiff asserts that because "UMC

used a boilerplate ITB intended for Clark County purchasing, not the sale of UMC's healthcare receivables, the ITB included many superfluous terms, and omitted many terms which would be commonplace in a large sale of healthcare receivables," OPS inquired of UMC whether it could condition its bid on the execution of a purchase and sale agreement. (#98). UMC permitted OPS to do so. *Id.*

Before OPS submitted a written bid of $8,583,710.82 for the accounts, through its agent Anurag Sett, OPS acknowledged receipt and awareness of Addendum No.1 and two subsequent addenda. (#104). On April 18, 2006, the Board of Hospital Trustees entertained an agenda item to approve the sale to the "purported highest, responsive and responsible bidder," and awarded the sale to plaintiff OPS. *Id.* On May 16, 2006, the parties finalized the Account Purchase Agreement (hereinafter "APA"), which included a substitution remedy for non-conforming accounts. (#98). Defendant UMC asserts that the APA's provision making substitutions mandatory for certain accounts makes the APA "materially" different from the ITB. (#104).

OPS asserts that after signing the APA, it learned that "accounts with a total of $70,000,000 – more than 10% of the portfolio – violated UMC's representations and warranties in the ITB and APA and therefore were non-conforming." (#98). A majority of these allegedly "non-conforming" accounts related to accounts on which UMC tried to settle with its account debtors at reduced payments in order to "squeeze more money out of the accounts," which allegedly violated not only the APA, but the representations of the Addendum No. 1. *Id.* After becoming aware of the alleged warranty breaches, OPS filed the instant complaint (#1) on July 25, 2008, "to realize the benefit of its bargain with UMC." *Id.*

Both parties filed motions for summary judgment, and the court certified two questions to the Nevada Supreme Court. (#64). The questions were: (1) whether NRS § 332.185 requires local governments to dispose of personal property through the competitive bidding process, and (2) whether strict compliance with the bidding requirements is required in light of the language in NRS § 332.185(1)

2

which allows for compliance "as nearly as possible." On October 14, 2010, the Nevada Supreme Court issued an opinion answering the certified questions. See *Orion Portfolio Services, 2 v. County of Clark,* 245 P.3d 527 (Nev. 2010). The court held that the local government was not required to dispose of property through competitive bidding, but when it opted to, such as here, the local government must comply with the structures of competitive bidding "as nearly as possible." *Id.* at 530. The court also held that in those situations, "a contract is void if it materially differs from the contents of the invitation to bid." *Id.* at 534. The court noted that the contract would be "void, not voidable, because the local government exceeded its authority and was not authorized to make such a contract," and that the private entity has the burden of ensuring that the contract contains no materially different provisions. *Id.* at n.5.

After the Nevada Supreme Court issued its opinion, this court denied the motions for summary judgment, holding that there were genuine issues of material fact surrounding whether the deviations in the APA were "material." (#84). The court held that the fact finder must "consider whether the deviation affected the amount of the bid, gave the bidder an advantage or benefit over the other bidders, and whether it was a vehicle for favoritism." *Id.* Plaintiff OPS argues that the deviations were not material, and defendant UMC takes the position that the deviations were material, thus voiding the contract. (#98 and #104).

Defendant UMC retained expert witness Jeffrey A. Lovitky, a Washington D.C. attorney, to opine as to the materiality of the deviations. *Id.* On July 18, 2011, defendant UMC sent a letter to Mr. Lovitky informing him of the nature of the case and providing him with several documents[1] to review in preparing his opinion. (#98 and #99-16 Exhibit D). Mr. Lovitky's first report, dated August 23,

---

[1] The documents provided to Mr. Lovitky include: (1) UMC's ITB, (2) UMC's Addendum No.1, (3) UMC's Agenda Item dated April 18, 2006, (4) minutes from the Clark County Board of County Commissioners for Item 65, (5) APA, (6) Office of the District Attorney Civil Division letter dated March 27, 2007, (7) Amendments 1, 2, and 3 to the APA, (8) this court's order dated June 9, 2009, (9) the Nevada Supreme Court's Opinion, (10) this court's order dated December 17, 2010, (11) plaintiff's answers to defendant's second set of interrogatories, (12) schedule of receivables received by UMC, and (13) the instant complaint. (#99-16 Exhibit D).

2011, contains five conclusions: (1) award should not have been made to OPS because the bid submitted by OPS contained substantial deviations from the ITB, (2) OPS should not have been provided with an opportunity to submit its APA after bid opening, (3) OPS was not authorized to make its bid contingent upon a subsequent APA, (4) the conduct of this procurement did not provide a level playing field for all bidders, and (5) the ITB varied materially from the contract awarded to OPS. (#104 Exhibit A). After reviewing several deposition transcripts, Mr. Lovitky provided a supplemental report dated December 18, 2011. (#104 Exhibit B). In his supplemental report, Mr. Lovitky purports to provide additional support for his opinion that the APA and the ITB materially differ, and states that the agency should have reissued the solicitation instead of negotiating with OPS, the transparency objectives of public bidding were not satisfied, and that OPS could not reasonably have relied upon the ITB's representation that none of the accounts had been offered a structured settlement. *Id.*

**Motion To Exclude Expert Opinions and Testimony (#98)**

Plaintiff OPS asks this court to exclude Mr. Lovitky's opinion in its entirety. (#98). OPS asserts that Mr. Lovitky's report is "a classic example of an attempt to substitute inadmissible expert testimony for the judgment of the fact-finder," and that the report contains minimal analysis, fails to identify the methodology utilized, and merely recites facts. *Id.* Plaintiff OPS also asserts that the report contains no analysis of how any of the alleged deviations affected the amount of OPS' bid or constituted a vehicle of favoritism toward OPS. *Id.* The report should further be excluded, OPS argues, because Mr. Lovitky failed to review the bids from the other bidders and does not have the requisite experience necessary to opine as to whether deviations were material. *Id.* Defendant UMC opposes the motion, and asserts that the Nevada Supreme Court's decision makes several of plaintiff's arguments moot, and that since this is a bench trial, the appropriate means for plaintiff to attack the expert report is through cross-examination during the trial. (#104).

A.      **Relevant Law**

"A witness qualifies as an expert by knowledge, skill, experience, training, or education," and

may provide testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witnesses apply the principles and methods reliably to the fact of the case."   *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).   Pursuant to Federal Rule of Evidence 702, the evidence or testimony of the expert should "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591.   The Supreme Court has recognized that Rule 702 permits both scientific and non-scientific experts to testify, and that in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Company v. Carmichael,* 526 U.S. 137, 141 (1999).

With regard to the admissibility of expert testimony, the trial court has an important gatekeeper function, which is significantly diminished in bench trials. *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir. 2000)(holding that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").   Nevertheless, the trial judge acting as trier of fact has "broad discretion to admit or exclude" expert testimony that is not helpful to its decision." *Beech Aircraft Corp. v. United States,* 51 F.3d 834, 842 (9th Cir.1995) When challenging an expert's testimony, "[d]isputes to strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight not the admissibility of this testimony."   *Kennedy v. Collegen Corp.,* 161 F.3d 1226, 1230 (9th Cir. 1998).

**B.    Arguments/Discussion**

**1.    Experience/Qualifications**

OPS argues that since Mr. Lovitky's opinion is based solely on his experience, he lacks the specialized experience and the "required objective foundation" to opine on the issues in the instant action. (#98); See *U.S. v. Frazier,* 387 F.3d 1244, 1265 (11th Cir. 2004)(holding that when an expert is relying on his experience, rather than proven scientific methodology, the proponent of the expert testimony must "explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the

case.").

OPS asserts that Mr. Lovitky has only government contract experience, not experience in bidding for healthcare accounts, and that he has not demonstrated how his experience led to the conclusions he reached. (#98). Defendant UMC argues that not only his Mr. Lovitky qualified to provide his opinion, but that since any issues with his report go to the weight and not the admissibility, OPS can address its issues through voir dire and cross-examination. (#104); *See Kennedy,* 161 F.3d at 1230; *Daubert,* 509 U.S. at 596.

With regard to Mr. Lovitky's experience, UMC asserts that Mr. Lovitky has "25 years of experience in all aspects of government contracts," received an L.L.M. degree in government procurement, authored over "a dozen publications on the subject of government contracts," testified twice in the last four years as an expert in the area of government contracts, and is certified in Health law by the Florida Bar Board of Legal Specialization and Education. (#104). Defendant UMC argues that Mr. Lovitky properly used his experience in this field, coupled with the hundreds of pages of pleadings, documentary evidence, and depositions he reviewed, to come to the conclusions contained in both his expert report (#104 Exhibit A) and supplemental expert report (#104 Exhibit B). *Id.*

The court agrees with defendant UMC, and finds that Mr. Lovitky possesses the requisite experience to proffer his opinion, and that any inexperience in a specific area could be addressed through cross-examination. *See Kennedy,* 161 F.3d at 1230; *Daubert,* 509 U.S. at 596; *First Tennessee Bank,* 268 F.3d 319, 333 (6th Cir. 2011)(holding that although the expert "may have lacked familiarity with some aspects of banking relationships, the district court correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility.").

### 2.    Proper Expert Testimony

Although Mr. Lovitky is qualified to testify, the court finds that his report should be excluded. The interpretation of the plain language of a contract is a matter of law, not fact, and therefore is inappropriate for expert testimony. *Welles v. Turner Entertainment Co.,* 503 F.3d 728, 735 (9th Cir.

1   2007). Not only does Mr. Lovitky's report contain his opinion on how the contracts are to be interpreted

2   and what authority the contracts provide, but it also contains common sense opinions that are

3   unnecessary, as they would not assist the trier of fact, the judge, in "understand[ing] the evidence or...

4   determin[ing] a fact in issue." See *Welles,* 503 F.3d at 735; *S.E.C. v. Capital Consultants, LLC,* 397

5   F.3d 733, 749 (9th Cir. 2005)(holding that an expert may not opine on what authority the language of

6   a contract gives a party to act.); *U.S. v. Hanna,* 293 F.3d 1080, 1086 (9th Cir. 2002)(holding that expert

7   testimony is proper if it addresses an issue "beyond the common knowledge of the average lay person.");

8   *Daubert,* 509 U.S. at 591.

9          Upon review of Mr. Lovitky's report (#104 Exhibit A), the court finds that the report's contents

10  can be separated into eight categories: (1) recitations of facts of the case or arguments contained in

11  motions before the court, (2) interpretations of the APA and the ITB and what authority the parties

12  possessed during negotiations, (3) opinions of what *should have* or *could have* been done, (4)

13  conclusions relating to the "unfair competitive advantage," prejudice caused, and result of the

14  negotiations that the judge could reach based on his knowledge of contract law and the facts of the case,

15  or that the attorneys could argue before the court, (5) statements that mirror provisions contained in

16  NRS Chapter 332, (6) arguments that the attorneys could make based on the Nevada Supreme Court's

17  opinion, (7) statements relating to the purpose of the competitive bidding process, which are found in

18  the Nevada Supreme Court's opinion and NRS, and (8) conclusory statements of "material deviations"

19  not accompanied by any analysis.

20         Purported expert testimony of this nature is properly excluded, as it would not be helpful to the

21  judge in making his decision and offers nothing more than what defense counsel could argue during

22  closing arguments. *Beech Aircraft Corp.*, 51 F.3d at 842; See also *CFM Communications, LLC. v. Mitts

23  Telecasting Co.,* 424 F. Supp. 2d. 1229, 1234-35 (E.D. Cal. 2005); *Frazier,* 387 F.3d at 1262-63

24  (holdings that "[p]roffered expert testimony generally will not help the trier of fact when it offers

25  nothing more than what lawyers for the parties can argue in closing arguments.").

26

7

Likewise, Mr. Lovitky's supplemental report (#104 Exhibit B) is unhelpful to the court, and is excluded. *Id*. The Nevada Supreme Court has narrowed the issue before this court: whether the deviations were material, i.e. whether "the deviation affected the amount of the bid, gave the bidder an advantage or benefit over the other bidders, and whether it was a vehicle for favoritism." (#84). In Mr. Lovitky's supplemental report, he recites facts already in the record, explains the purposes of certain clauses contained in the ITB, states how provisions would violate public policy or be an illegal assignment, comments on what *should have* happened within the realm of competitive bidding, and gives an opinion regarding OPS's reliance on UMC's representation relating to accounts having been offered structured settlements. (#104 Exhibit B). The supplemental report is devoid of any opinion relating to the *materiality* of the deviations, which is the issue before this court, and simply points out more differences between the APA and the ITB. (#84); See *Orion Portfolio Services, 2,* 245 P.3d at 534 (holding that "it is well-established that the terms of the advertisement and the terms of the bid or contract do not need to be identical.").

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff OPS 2, LLC's Motion To Exclude Testimony and Opinions of Defendant's Expert Jeffrey A. Lovitky, Esq. (#98) is GRANTED.

DATED this 9th day of February, 2012.


_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**